UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03807-NYW-NRN

JOHN T. HESSERT,

Plaintiff,

v.

THE STREET DOG COALITION, KATRINA WESCHLER, and BOARD OF DIRECTORS OF THE STREET DOG COALITION (all named defendants),

Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
*2:56 pm, Apr 14, 2026*
JEFFREY P. COLWELL, CLERK

**PLAINTIFF'S SECOND SUPPLEMENTAL MOTION TO MODIFY ECF NO. 109: RENEWED REQUEST FOR AUDIO RECORDING (not written transcript) OF THE MARCH 30, 2026 STATUS CONFERENCE AT GOVERNMENT EXPENSE PURSUANT TO 28 U.S.C. § 753(f); MOTION TO TOLL RULE 72 OBJECTION DEADLINE; MOTION TO STRIKE UNSUPPORTED SANCTIONS THREAT IN ECF NO. 104; AND REQUEST FOR CLARIFICATION OF PROCEDURAL RECORD FOR PURPOSES OF DE NOVO REVIEW AND APPELLATE PROTECTION**

Plaintiff John T. Hessert, proceeding pro se and in forma pauperis (IFP) under 28 U.S.C. § 1915, respectfully supplements his prior motions (ECF Nos. 107, 108, 110, and 111) and moves the Court to modify its April 13, 2026 Minute Order (ECF No. 109) as follows:

1    Order preparation of the official audio recording (MP4 digital file via AO-436) of the March 30, 2026 status conference at government expense, with full waiver of the $34.00 fee;

2    Certify pursuant to 28 U.S.C. § 753(f) that this action is not frivolous and that the audio recording is necessary to decide the issues presented in Plaintiff's forthcoming objections to the Magistrate Judge's Recommendation and Order (ECF No. 104);

3    Toll the Rule 72 objection deadline until 14 days after the audio recording is docketed and made available to Plaintiff;

4    Strike the unsupported sanctions threat contained at ECF No. 104, p. 10, as premature and lacking any record support; and

5    Grant such other relief as the Court deems just and proper, including restoration of the full title of any truncated docket entry (e.g., ECF No. 110) and clarification of the

1

procedural record to preserve Plaintiff's rights for de novo review and potential appellate review in the United States Court of Appeals for the Tenth Circuit.

6    Strike the reference to a "Standing order on AI" that the plaintiff has no awareness of, and seems at a glance to be non -applicable to the current case as no incorrect case citation has been referenced or identified, and moreover unconstitutional.

7    Reconsider Recusal as stated in ecf 98, recuse, and do not further contact or interact with plaintiff for any means or reason either related to this case or any other reason

8    The Court's Standing Order on AI, as applied here to an indigent litigant with no history of inaccurate citations, is an overbroad regulation that chills protected advocacy and constitutes an unconstitutional prior restraint on the Plaintiff's right of access to the Courts. The court must vacate this reference from the record.

In support thereof, Plaintiff states as follows:

**I. PROCEDURAL BACKGROUND AND THE APRIL 13, 2026 ORDER (ECF NO. 109)**

Plaintiff is an indigent, unhoused litigant who has been granted IFP status. He traveled to colorado in November 2025 to sue an illegal non profit that the state of colorado harbored. None of the agents or directors of the non profit were in the state. They had an outdated closed fed ex box and an abondended storage room in a paper shredding facility as their only footprint here. He filed his federal suit in November , in person in Denver colorado federal court. With an injunctive relief request.

The clerks improperly assigned this to magistrate Gurly, Than magistrate Neuriterer. In violation of local rules. Once assigned District Judge Wang refused to hold a hearing or rule on the pending TRO INJUNCTION MOTOIN, despite active appeal cementing this issue, and despite clear notice of the defendants in January 2026 established through emails, that were entered into the record.  This refusal persists to today. April 14th 2026 4.5 months after the civil action was filed.

This has resulted in irreparable harm and prejudice to the plaintiff.

These issues with defendants illegality…

This required an alternative service motion, which this court refused to rule timely on, along with the Injunction TRO motion which this court also refused to timely rule on.

 On March 30, 2026, this Court finally conducted a telephonic status conference before

2

Magistrate Judge N. Reid Neureiter, noticed solely as a status conference on service-of-process issues (ECF No. 100). After a sua Ponte cancellation — possibly done because of ex parte request by defendants — of the earlier planned Feb 27th status conference on feb 26th day before it was scheduled to have occurred.

 Plaintiff had previously requested in ECF No. 42 that any substantive matters be handled by written motion to avoid an ex parte or hybrid proceeding and to preserve a clear record. That request was denied.

Plaintiff objected to the march 30th conference in writing before it happened.

On April 3, 2026, the Magistrate Judge issued a 15-page Recommendation and Order (ECF No. 104) that (1) addressed service issues, (2) recommended denial of Plaintiff's renewed requests for temporary restraining order and preliminary injunctive relief (ECF Nos. 32, 65, 70), and (3) included a sanctions warning at page 10 concerning claims against individual defendants. The Recommendation contains characterizations of the March 30 hearing, omissions regarding Defendant Katrina Weschler's distinct status as paid Executive Director, and a recommendation on injunctive relief that Plaintiff contends exceeded the scope of the noticed hearing.

Plaintiff timely filed a comprehensive Motion for Preparation of Transcript at Government Expense (ECF No. 107), a detailed First Supplement (ECF No. 108), and additional supporting filings (ECF Nos. 110, 111) explaining why the verbatim record is mechanically necessary under 28 U.S.C. § 753(f), *Griffin v. Illinois*, 351 U.S. 12 (1956), and Tenth Circuit precedent. Those filings incorporated by reference the full procedural history, including the Tenth Circuit's prior remand for reassignment, the sua sponte cancellation of the February 27, 2026 priority Rule 65 hearing, and newly available evidence (the April 3, 2026 email from Defendants directing service to an allegedly non-compliant address).

On April 13, 2026, the Honorable Nina Y. Wang issued ECF No. 109, granting the motion in part by extending the Rule 72 objection deadline by 14 days, denying production of the transcript/record, and directing Plaintiff to review the Court's Standing Order on Generative Artificial Intelligence. This order appears to be attempting to cover numerous things unrelated without legal standing or evidentiary basis.

The plaintiff needs the transcript for the objection and for appellate review.

 The Clerk and deputy subsequently advised that the audio recording is available for a $34.00 fee. Plaintiff has not yet received a physical copy of ECF No. 109 by U.S. Mail (delivery to

3

General Delivery, Bellingham, Washington, typically requires 7–10 days). So relies solely on a rendition over the phone by clerks staff. That is obviously incomplete. And what is available online on pacer monitor. Thus this filing is based on limited information. But made in good faith with the backdrop of the record and to compel prompt production of the audio transcript, and for the court to waive the 34 dollar fee as an alternative to the larger fee of written transcript production.

## II. LEGAL STANDARD: THE "BASIC TOOLS" OF LITIGATION FOR INDIGENT LITIGANTS

Title 28 U.S.C. § 753(f) expressly provides that a litigant proceeding in forma pauperis is entitled to a transcript (or its functional equivalent) at government expense when the court certifies that the suit is not frivolous and that the record is "needed to decide the issue presented." This statutory protection implements the constitutional command that indigent litigants must be afforded "as adequate appellate review as defendants who have money enough to buy transcripts." *Griffin v. Illinois*, 351 U.S. 12, 19 (1956). The Supreme Court has repeatedly held that a transcript or recording is a "basic tool" of meaningful review where, as here, the District Judge must conduct de novo determination of a Magistrate Judge's recommendation. *Britt v. North Carolina*, 404 U.S. 226, 227 (1971); *United States v. Raddatz*, 447 U.S. 667, 675 (1980); *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996) (district judge must review the "full record" to focus on the heart of the dispute).

The Tenth Circuit has recognized that denial of access to the record in these circumstances can constitute an abuse of discretion and a violation of due process. *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987) (unpublished but cited for record-completeness principle). The $34 audio recording is the least burdensome and most readily available form of that record. Its denial while simultaneously requiring high-accuracy objections (ECF No. 109) would create the very "closed loop" of incomplete review that *Griffin* and *Mayer v. City of Chicago*, 404 U.S. 189 (1971), forbid.

It presents, as a cheaper audio version vs an expensive written transcript, an opportunity for the government to waive this lesser fee - incur less expense themselves - and provide the Plaintiff with still a basic tool of litigation.

## III. SPECIFIC AND MECHANICAL NECESSITY OF THE AUDIO RECORDING

The audio recording is not a convenience; it is indispensable for the following reasons, each of

4

which was set forth with particularity in Plaintiff's prior motions and is incorporated herein by reference:

1    **Unsupported Sanctions Threat (ECF No. 104, p. 10).** The Recommendation warns that pursuit of claims against individual defendants "without a good faith, plausible basis" could result in sanctions. At the March 30 hearing, Plaintiff provided a detailed, respectful, and legally grounded oral proffer citing Colorado statutes (including C.R.S. § 7-128-402(2)) and explaining the personal involvement of board members and the Executive Director. The Magistrate did not dismiss the claims, strike any allegations, or issue any contemporaneous warning. The audio is the only means to demonstrate that the post-hearing sanctions threat lacks record support and to preserve Plaintiff's good-faith showing for de novo review and appellate protection. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980).

2    **Distinct Status of Defendant Katrina Weschler.** The Recommendation groups Ms. Weschler with volunteer board members and does not address her separately despite Plaintiff's explicit oral distinction of her as the paid Executive Director (with alleged personal involvement in regulatory violations, subpoena defiance, and evidence issues). The audio will memorialize her self-identification on the call and Plaintiff's proffers, which the Recommendation omits. Plaintiff reasonably pointed out, she was the paid fountainhead, the standards were not there under her leadership, the founder of the organization is no longer with the organization and that the board delegated responsibilities to her.

3    **Recommendation Exceeded the Scope of the Noticed Hearing.** The March 30 conference was noticed solely for service-of-process issues. It was not noticed as a Rule 65 evidentiary hearing, and no evidence was elicited on the four *Winter* factors. Nevertheless, ECF No. 104 devotes nearly two pages to recommending denial of injunctive relief without the mandatory findings required by Fed. R. Civ. P. 52(a)(2) and *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) (as adopted in *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276 (10th Cir. 2016)). The audio is the only record that can prove this procedural overreach. Moreover Judge Wang previously in ECF 61 specifically said this hearing would not , and subsequent recommendation from it, would not, under due process be dealing with the

5

TRO injunction motion. She wrote this in a court order. And yet, under bait and switch, it seems to have played out contrary to her written order.

4    **Procedural Irregularities, Actual Notice, and Technical Issues.** The audio will confirm that Defendants' representatives (including Ms. Weschler) affirmatively called in, identified themselves, and participated—directly supporting actual notice and the significance of the April 3, 2026 email (ECF Nos. 107–109). It will also document the technical difficulties at the outset of the hearing, including the Magistrate's refusal to activate Plaintiff's video stream and the instruction to "unmute" a connection Plaintiff could not control. These details are essential to any claim of procedural fairness. *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986) (accurate record required for hybrid or ex parte proceedings). And suggest an ongoing appearance of impropriety and just cause for recusal when viewed in context of the entire record.

5    **Context for Newly Available Evidence and Equitable Estoppel Arguments.** Plaintiff's subsequent motions (ECF Nos. 110, 111) rely on the April 3, 2026 email and raise dual-layer equitable estoppel. The audio places those communications in the proper context of the hearing discussion. The written transcript is preferable, but if the court refuses to uphold justice and is as strapped for resources as the plaintiff — simply unable to pay the required fee — the court should waive the lesser fee of 34 dollars for the audio production.

6    The deputy in that department said this could be produced in minutes, once form is filled out, and sent to the plaintiff via mp4. Thus making the process comply with the current 14 day time to object, timeline. That was outlined in the court order.

7    Plaintiff has no credit card or money to enter into the court document, and as he is in Bellingham WA, if he was going to pay the 34 dollars would have to send via US mail a money order for that amount. Its not clear if that is acceptable or to whom that would be addressed. And would also result in a delay of payment and delay of production, that would make the current 14 day extension likely not sufficient. Plaintiff stresses he shouldn't have to pay this, and mail things twice to the defendants. That's creeping toward a 100 bucks he doesn't have to spend.

**IV. PREJUDICE FROM THE CURRENT DEADLINE AND U.S. MAIL SERVICE**

Plaintiff has not received a physical copy of ECF No. 109. Given his General Delivery mailing

6

address in Bellingham, Washington, and the Clerk's confirmation that non-EF filers receive documents by U.S. Mail, receipt is expected to take 7–10 days. He is not signed up for ECF filings. The 14-day extension therefore affords only a few working days after actual receipt— insufficient time to prepare specific, record-based objections without the audio. Tolling is required to prevent manifest prejudice and to ensure meaningful access to de novo review. 14 days might not be sufficient. This is another example of improper timing by the court.

## V. THE COURT'S AI STANDING ORDER AND THE NEED FOR AN ACCURATE HUMAN RECORD

The Court's Standing Order on AI, as applied here to an indigent litigant with no history of inaccurate citations, is an overbroad regulation that chills protected advocacy and constitutes an unconstitutional prior restraint on the Plaintiff's right of access to the Courts.

Plaintiff questions the notice and constitutionality of the recent judge wang order referencing "Standing order on AI". The March 30, 2026 hearing was a live, human telephonic proceeding involving verbal proffers, statutory citations, and direct party identification. Plaintiff attempted to appear via video, but the magistrate, as stated, refused to allow him to enter the video chat. Seeming to prefer the telephone. It appeared to the plaintiff that the magistrate harassed him at this time and was taunting him. Plaintiff research states that the magistrate or chambers rep would have been the person to let him into the hearing, and that he himself, who was properly on deck, cannot force the meeting holder to allow him into the hearing. This resulted in a appearance of impropriety that needs to be memoralized on the record through production of audio or written transcript of the march 30th hearing.

## PROPOSAL FOR JUDICIAL ECONOMY AND RESOLUTION OF PROCEDURAL DISPUTE

In the interest of judicial economy and the "just, speedy, and inexpensive determination" of this action pursuant to **Fed. R. Civ. P. 1**, Plaintiff submits that the current dispute regarding the production of the March 30, 2026 record may be rendered moot by a corrective order from this Court.

Plaintiff is forced to seek the verbatim record primarily because the Recommendation (ECF No. 104) contains material omissions and factual inaccuracies regarding the verbal proffers made at the hearing. However, should the Court elect to **vacate the unsupported sanctions threat** and

**authorize alternative service via email** on all named individual Defendants (consistent with their actual notice and the futility of traditional service demonstrated in ECF Nos. 107 and 110), the necessity for the transcript would be extinguished.

Plaintiff maintains that such an order would resolve the existing "closed loop" of procedural error, preserve the integrity of the record, and allow this litigation to proceed immediately to the merits without further administrative delay or appellate intervention.

To satisfy the Court's demand for accuracy while preparing objections, Plaintiff must have access to the actual audio of that human proceeding. Denial of the $34 audio recording while insisting on precision would place an IFP litigant in an untenable position and undermine the very accuracy the Order seeks to protect. The order and the record also fails to suggest with any specificity that any legal citation made by the plaintiff at any time, is incorrect or questionable. The plaintiff proceeding IFP and Pro Se has done his best to research all citations and properly , if not admittedly at times creatively, apply them to the difficult circumstances of this case. The record, an objective person would likely find, overwhelmingly confirms that the citations and precedents and legal theories that the plaintiff outlines are correct, legally sound and applicable. It is actually the court that has broken their own rules, and mis-cited statues. Justifying scrutiny of this latest order as retaliatory, and improper. And just grounds for recusal.

## VI. CONSTITUTIONAL OBJECTION TO COMPELLED AI DISCLOSURE

While Plaintiff respects the Court's interest in accuracy, the directive in ECF No. 109 to comply with the Standing Order regarding Generative AI raises significant constitutional concerns that Plaintiff must preserve for the record:

1  **First Amendment and Right to Petition:** Forcing a *pro se* litigant to "disclose" or "certify" the technology used to draft their thoughts is a form of **compelled speech** that may chill the First Amendment right to petition the government for redress of grievances. The Court's Standing Order on AI — which the plaintiff has not seen or been served with but has previously seen as a reference in News articles associated with district Judge Wang when he researched her after she was assigned to this case— as applied here to an indigent litigant with no history of inaccurate citations, is an over-broad regulation that chills protected advocacy and constitutes an unconstitutional prior restraint on the Plaintiff's right of access to the Courts.

2  **Due Process and Equal Protection:** The Standing Order effectively creates a "rebuttable

8

presumption" of inaccuracy against *pro se* filers. By singling out certain types of assistance, the Court imposes a burden on indigent litigants that is not equally applied to well-funded law firms whose "human" drafting is often just as prone to error as automated tools.

3    **Invasion of Privacy and Work Product:** Compelling a litigant to disclose their private research methods or the internal tools used to formulate legal strategy is an overreach that encroaches upon the **work-product doctrine** and personal privacy. And creates an additional burden of production, an additional time and resources to spend. This protected work product is not available upon request or order by the court, it would be akin to asking a NBA player to produce videos of every one of their practices or a research assistant to produce screen recordings of everything they looked at online.

4    **Impermissible Judicial Legislation From the Bench and Retaliatory Surveillance:** The Court's directive in ECF No. 109 to comply with a "Standing Order" on AI—without identifying a single inaccurate citation in Plaintiff's filings—represents an improper "legislating from the bench" that mirrors the "Great Firewall" tactics of authoritarian regimes. Like China. To suppress citizen engagement, advocacy, research, fact and truth, and criticisms of the government. Or to chill their good faith self-representation in a court case. To disempower citizens in a way that is contrary to American law and values. To freedom of speech, to freedom of thought, To freedom of religion, and to freedom of self -representation. Just as this Court previously attempted to "graft" a non-existent requirement of a "pending motion" onto Local Rule 40.1 to justify its own assignment errors, it **now seeks to graft a technological disclosure requirement onto the FRCP that Congress never authorized**. The law requires a litigant to cite **authority**, not to disclose the search engine, library, or drafting tool used to find it. To demand "accuracy" — with no specific reference of an inaccurate citation by the plaintiff supplied — from an indigent Plaintiff while the Court itself issues orders containing incorrect statutory citations (e.g., **ECF Nos. 55 and 61**) and withholds the $34.00 audio evidence required to verify the record, is a retaliatory overreach designed to chill advocacy rather than ensure the integrity of the proceedings. It is unconstitutional.

5.    Under **28 U.S.C. § 2071(a)**, local rules and standing orders "shall be consistent with Acts of Congress and rules of practice and procedure prescribed [by the Supreme

Court]." See also:

*6*      ***Miner v. Atlass***, 363 U.S. 641, 650 (1960): Holding that "the power of the District Court to make its own rules... is not an arbitrary or unlimited power" and cannot be used to introduce "basic procedural innovations" that aren't in the FRCP.

*7*      ***Wooley v. Maynard***, 430 U.S. 705, 714 (1977): Holding that the right of freedom of thought protected by the First Amendment "includes both the right to speak freely and the right to refrain from speaking at all.

Plaintiff maintains that the only standard the Court should apply is the accuracy of the **final product**. If the law and facts cited are correct, the "origin" of the drafting is a private matter beyond the Court's constitutional reach. If the court persists on this issue, without recusing. The plaintiff will be forced to appeal, with good faith. The plaintiff states firmly his objective with his case is not to correct the constitutional issues in the state of Colorado where he does not live. Or to police the docket for more errors— which are numerous and ongoing from the assigned judicial officers.

 This court needs to stop obstructing and issuing nonsensical orders on incorrect statues, random unsubstantiated threats (ecf 20 and ecf 104 not supported by anything on the record), and attempting to chill the speech and threaten the plaintiff unconstitutionally while breaking their own rules and— allow this case to proceed on the merits and substance of his claims against the defendants. Which requires a jury trial not 100 orders from the judges and a refusal to timely handle the case. Plaintiff states this respectfully.

If the Court does not vacate this directive, Plaintiff will seek appellate review on constitutional grounds, as the Court lacks the authority to use 'Standing Orders' to bypass the Rules Enabling Act and monitor the private research habits of American citizens.

## VII THE DISPROPORTIONAL BURDEN ON INDIGENT, PRO SE LITIGANTS

Finally, the Court must consider the practical and equitable implications of ECF No. 109. Plaintiff is an indigent litigant who relies exclusively on public resources—including library facilities, limited computer terminal access, and General Delivery mail—to prosecute this action. Plaintiff attempted for 3 months to get a face to face TRO injunction hearing with the judges, they refused.

Mandating that a *pro se* litigant navigate extra-statutory "Standing Orders" and provide

10

technological certifications is a procedurally oppressive requirement that serves no purpose other than to create a "trap for the unwary." The Supreme Court has long held that "the fundamental requisite of due process of law is the opportunity to be heard," ***Grannis v. Ordean***, 234 U.S. 385, 394 (1914), and that this right must be "meaningful." By imposing technological hurdles on a litigant who is already struggling with basic resource scarcity, the Court is effectively diluting that right and creating an adversarial environment that favors the well-resourced Defendants. Who are hiding and evading.

## VIII  THE ABSURDITY OF COMPELLED DISCLOSURE: THE "TRUTH VS. TOOL" DILEMMA

The procedural impropriety of the Court's Standing Order is best illustrated by a practical example grounded in the current record. In **ECF Nos. 55 and 61**, the Court issued orders containing incorrect statutory citations regarding the standards for interlocutory appeal and IFP certification.

If Plaintiff, utilizing a common search engine or digital research tool, enters a query such as: *"What is the difference between 28 U.S.C. § 1292(a)(1) and the statutes cited in the Court's Order?"* and discovers that the Court has indeed hallucinated or misapplied the law, the "Standing Order" would perversely require the Plaintiff to "certify" and "disclose" the digital tool used to uncover the Court's own error.

10 out of ten search engines all say the same thing. District Judge Wang cited the incorrect statue.

This requirement is preposterous for three reasons:

1    **The Primacy of the Citation:** Under **Fed. R. Civ. P. 11**, a litigant is responsible for the **accuracy** of their legal citations. Whether a correct citation was found in a physical book at a public library, via a Google search, or through an AI interface is legally irrelevant. The law is the law, regardless of the map used to find it.

2    **Shifting the Burden of Accuracy:** To demand that a *pro se* litigant disclose their research tools while the Court—equipped with professional clerks and paid legal databases—is itself issuing orders with incorrect statutory references, is a manifest irony. It suggests a standard where the "method" of research is under more scrutiny than the "merits" of the law.

11

**3**    **Chilling Effect on Correction of Error:** Requiring a certification of "how" a discovery was made creates a procedural "choke point" that discourages litigants from challenging judicial error. If the Plaintiff finds the truth via a digital search, he should not be burdened with a "disclosure" requirement that his well-funded adversaries do not share regarding their own proprietary research software. And that the court themselves, is not making.

**The Court's jurisdiction is limited to the accuracy of the record.** So long as Plaintiff's citations to the Colorado Revised Statutes and the United States Code are factually and legally correct, the digital "pathway" to those citations is a private matter of research methodology protected from government surveillance.

## 4. THE PRO SE LITIGANT'S SAFE HARBOR AND LACK OF PREJUDICE

Plaintiff notes that as a *pro se* litigant navigating these proceedings with severely limited resources, he is entitled to a degree of leniency regarding the "technicalities" of legal drafting. *See **Haines v. Kerner**, 404 U.S. 519, 520 (1972)* (holding that *pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers").

**Lack of Intentional Error:** If any inadvertent error in a citation or procedural formality were to occur, it is strictly a function of resource scarcity—not a "bad faith" attempt to mislead the Court. Plaintiff has derived no benefit from the immense difficulty of managing this docket from public library terminals.

**Absence of Prejudice to Defendants:** While the Court focuses on the "accuracy" of Plaintiff's research methods, the Defendants continue to benefit from their own **actual evasion** and the ongoing **spoliation of evidence** (the Wisconsin clinic video). Any minor technical error by a *pro se* Plaintiff results in zero prejudice to the Defendants, whereas the Court's current procedural barriers result in terminal prejudice to the Plaintiff's claims.

**The "Good Faith" Standard:** Under *Fed. R. Civ. P. 11*, sanctions are reserved for willful misconduct. There is no evidence of such misconduct here. Plaintiff's filings have remained focused on the merits, while the Court's orders have focused on technological disclosure and premature warnings that serve to chill the advocacy of the indigent.

## VIIII. OBJECTION TO COMPELLED DISCLOSURE AND EVIDENCE OF COURT-SIDE INACCURACY

12

Plaintiff further objects to the Court's directive in ECF No. 109 as retaliatory and procedurally improper based on the following record evidence:

- **Pattern of Judicial Error:** The Court has itself issued substantive orders (e.g., **ECF Nos. 55 and 61**) containing incorrect statutory citations, violated Local Rules regarding case assignment, and refused to hold a timely Rule 65 hearing. These "clerical hallucinations" and procedural errors suggest that if anyone is struggling with accuracy—whether through the use of unverified AI templates, clerk production of court orders, or administrative incompetence—it is the Court, not the Plaintiff.

- **The "Great Firewall" of Information:** By threatening Plaintiff with an AI Standing Order while simultaneously blocking access to the $34.00 audio recording of the March 30 hearing, the Court is creating an information vacuum. This "Closed Loop" allows the Court to misrepresent what occurred at a verbal hearing while hiding the literal evidence (the audio) required to correct the record.

- This is one and the same as the defendants subopoena defiance, where they selectively edit the record to omit 10 minutes of relevant video surveillance to hide what happened. This is the court proceeding with bad faith.

- **Retaliatory Overreach:** Singling out a *pro se* litigant for "AI monitoring" without pointing to a single incorrect citation in Plaintiff's filings is a retaliatory tactic. This type of technological surveillance—mandating that the government "look under the hood" of a citizen's private thoughts and drafting process—is fundamentally un-American. It mirrors the digital authoritarianism of regimes like the Chinese government, which monitor private thought to suppress dissent. Plaintiff states clearly he won't be providing any such disclosure to District Judge wang and will appeal immediately on constitutional grounds if she doesn't retract her order and if she doesn't explain her incorrect statue citations with ecf 55 and 61. The plaintiff notes that ecf 109 is not a final order, so he questions if appeal is possible. But maintains further delay or appeal is not his desired path forward with this case. The entire group of defendants should be deemed served, they should be sanctioned and the case should proceed on merits.

- **Due Process Denial:** The Court's "Standing Order" is being used here as a tool to chill Plaintiff's advocacy. To demand "precision" from an indigent litigant while "bolting the door" to the audio record — and more properly the actual transcript of record — is the

13

definition of a Due Process violation. And an Abuse of Discretion. Plaintiff's filings have remained grounded in Colorado and Federal law; the Court's orders have not.

- **Plaintiff specifically anticipated this exact problem** in ECF No. 42, where he requested that any substantive issues be addressed through written motion briefing rather than an un-noticed telephonic status conference. That request was denied. The Court then conducted the March 30, 2026 hearing without providing a written agenda, proceeded with a hybrid proceeding, and later issued a Recommendation (ECF No. 104) containing material omissions and characterizations of the oral record. Plaintiff now faces the very prejudice he sought to avoid: the inability to prepare accurate, specific objections under Rule 72 without access to the verbatim record.

- Denying an indigent litigant the basic tool necessary for meaningful de novo review — including Appeal — constitutes an abuse of discretion and violates due process. *Griffin v. Illinois*, 351 U.S. 12, 19 (1956) (indigent litigants must be provided the "basic tools" of an adequate defense or appeal); *Britt v. North Carolina*, 404 U.S. 226, 227 (1971) (transcript or its equivalent is a "basic tool" where necessary for meaningful appellate review); *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996) (district judge must have the full record to conduct proper de novo review). The $34 audio recording is the least burdensome means of providing that essential record.

- Plaintiff has already appealed the denial of injunctive relief, and should the Court adopt the Magistrate's improper Recommendation (ECF 104) without first providing the record, with a final order that the tenth circuit will be forced to review, Plaintiff will promptly seek further appellate review with good faith. By withholding a nominal $34.00 audio recording that would reveal the truth of the verbal record, the Court is 'bolting the door to equal justice' in violation of **M.L.B. v. S.L.J.** and **Griffin v. Illinois**. Such conduct creates an appearance of partiality that would cause any reasonable observer to question the Court's impartiality, necessitating review under **Liljeberg v. Health Services Acquisition Corp. And cements the earlier appeal's good faith, and the facts that the courts ongoing refusal to handle the injunction motion resulted in prejudice and irreparable harm ongoing to the Plaintiff. Proving his earlier good faith, and the earlier abuse of discretion by this court that resulted in alterations to the status quo (Defendants changed reg agent and address and defied state court subopoena for full surveillance video, are hiding their address locations from US**

14

**Marshalls service).**

## X. THE TRANSCRIPT/RECORD IS REQUIRED TO PRESERVE THE FULL RECORD FOR DE NOVO REVIEW AND APPELLATE PROTECTION

This case presents a pattern of procedural steps that have delayed resolution on the merits: initial mis-assignment corrected by the Tenth Circuit, sua sponte cancellation of the February 27, 2026 Rule 65 hearing, refusal of Plaintiff's ECF No. 42 request for written proceedings, and now denial of the minimal-cost audio record. These steps have already resulted in irreparable harm to Plaintiff's ability to protect evidence and prosecute his claims. The audio is essential not only for Rule 72 objections but to protect the record for any future appeal, where the Tenth Circuit will examine whether the District Court abused its discretion or violated due process by denying an indigent litigant the basic tools of review. *See Griffin*, 351 U.S. at 19; *Mayer*, 404 U.S. at 196-97. Production of the audio is the least burdensome way to ensure judicial efficiency, fairness, and compliance with constitutional guarantees of equal protection and due process.

## XI. THE SPECIFIC IRONY OF JUDICIAL OVERREACH AND THE "CHINESE-STYLE" FIREWALL

The Court's insistence on this disclosure mandate is particularly problematic when viewed against the backdrop of Judge Wang's own well-documented history with accuracy and the global context of information control. While Judge Wang's Standing Order is ostensibly designed to prevent "hallucinations," it is a matter of public record—and documented in this case at **ECF Nos. 55 and 61**—that the Court itself has issued orders containing non-existent or misapplied statutory references. This creates a "Double Standard of Accuracy" where an indigent litigant is forced to certify his research tools under threat of sanction, while the Court maintains the "inherent authority" to be wrong without consequence.

Furthermore, the "Prior Restraint" and surveillance inherent in this Order mirror the very digital authoritarianism and "Great Firewall" tactics associated with the Chinese government's efforts to monitor and modify the research and thought processes of its citizens. It is a manifest irony that Judge Wang, who has been recognized in the press for her background and rise from Taiwan—a nation defined by its democratic resistance to such authoritarian surveillance—would now impose a "digital checkpoint" in an American courtroom. By requiring a *pro se* litigant to reveal

or even keep track of the "provenance" of their research, the Court is effectively "bolting the door" to meaningful access for those who cannot afford private counsel, while simultaneously creating a "fishing expedition" into the Work Product and mental impressions of the indigent. Under *Warner v. Gilbarco* (2026), such a blanket demand for disclosure is an unconstitutional invasion of the litigation strategy and a violation of the Due Process guarantee of an equal playing field.

**XII   The Overbreadth Doctrine and the Chilling of Protected Advocacy:** The Court's mandate in ECF No. 109—imposing a "Standing Order" that requires disclosure of drafting tools—is unconstitutionally overbroad. Under the **Overbreadth Doctrine**, a regulation is invalid if it is so broad that it "chills" or inhibits the legitimate exercise of First Amendment rights. *See Gooding v. Wilson*, *405 U.S. 518 (1972)*. By threatening an indigent litigant with sanctions for the "unauthorized" use of research technology without defining the boundaries of that technology, the Court creates a "chilling effect" where the Plaintiff must "steer far wider of the unlawful zone" than if the boundaries were clearly defined. *See New York Times Co. v. Sullivan*, *376 U.S. 254 (1964)*.

- **Abstract Advocacy vs. Direct Sanction:** Just as the Supreme Court in *Brandenburg v. Ohio*, 395 U.S. 444 (1969), prevented the chilling of abstract advocacy, this Court cannot chill the abstract process of legal research and drafting.
- **Procedural Surveillance:** This Order functions as a form of "prior restraint" and surveillance that "freezes" speech before it occurs. If a *pro se* litigant is forced to certify the "provenance" of every thought or citation, they are no longer free to petition the government without the heavy hand of judicial surveillance monitoring their private library and computer use. Under *Dombrowski v. Pfister*, 380 U.S. 479 (1965), such a "chilling effect" on the exercise of constitutional rights—especially in the context of a Plaintiff seeking civil rights redress—is a manifest violation of Due Process.
- This aligns to the issues where the defendants sought to chill his speech by getting an ex parte injunction against him, to intimidate him from pursuing the insurance claim. It shows a pattern of civil rights violations, that the court is not correcting, but disgracing themselves by actively participating in.

## XIII. VOID FOR VAGUENESS: THE ABSENCE OF LEGAL DEFINITION

## AND JUDICIAL DERELICTION

The Court's Standing Order is unconstitutionally **Void for Vagueness** because it fails to provide any objective or statutory definition of what constitutes "Generative AI" versus standard interactive research tools. In a modern digital culture, the line between a "simple query search," a "grammar-checking algorithm," and "AI-assisted research" is non-existent. Without a clear reference point in law—which the Court lacks the legislative authority to create—this Order is a "trap for the unwary."

- **Judicial Overreach vs. Judicial Duty:** Rather than performing the core judicial function of ruling on Plaintiff's **Motion for Injunctive Relief (pending since November 2025)**, the Court has spent months legislating from the bench to create "technological checkpoints." By failing to hold a mandatory Rule 65 hearing or issue a ruling on the merits for nearly five months, while simultaneously obsessing over the "provenance" of Plaintiff's research, the Court is prioritizing administrative surveillance over its Article III duty to provide timely redress.

- **The "Interactive Research" Reality:** Interactive research is an integral part of modern life, media, and legal study. There is no law—and Judge Wang is not a lawmaker—that permits a court to bifurcate the "human mind" from the "digital tool" used to inform it. To demand such a distinction without a statutory definition is not only "insufficiently thought out," but it is a manifest overreach of judicial power designed to complicate the docket rather than resolve it.

- **A Pattern of Delay:** The Court's preoccupation with AI disclosure—in a case where the Plaintiff has cited only valid, existing laws—appears to be a pretext for further delaying a ruling on the merits. A Judge's job is to apply the law to the facts, not to act as a "technology regulator" for indigent citizens who are forced to use public library computers to fight for their constitutional rights.

**XIIII   The Stand-in order — tho the plaintiff has not seen it — is Unconstitutionally void for vagueness and violates the separation of powers**

- **The Court's Standing Order violates my Fifth Amendment right to Due Process because it is unconstitutionally vague.** I am left to guess at the meaning of "AI" because it is not defined in the Order. Since common tools—like spellcheck, grammar software, and advanced search engines—all utilize some form of artificial intelligence, I lack "fair

17

notice" of which specific tools trigger a disclosure requirement.

- **The Order forces me to "guess at its meaning" in direct conflict with *Connally v. Gen. Constr. Co.*.** Because people of common intelligence differ on whether a tool like "autocorrect" constitutes "AI," I am at constant risk of accidental non-compliance and subsequent sanctions.

- **This lack of a clear definition invites arbitrary enforcement.** As noted in *Grayned v. City of Rockford* (1972), vague rules impermissibly delegate policy matters to a judge's subjective, ad hoc discretion. I am concerned the Court has reserved the power to decide what qualifies as a violation only *after* I have already filed my documents.

- **The Court is engaging in judicial overreach by attempting to define and regulate emerging technology.** Under the Separation of Powers and *Marbury v. Madison* (1803), the judiciary's role is to interpret the law, not to create new regulatory policy. Defining complex technological categories for general regulation is a legislative function that belongs to Congress, not the bench.

- **The disclosure requirement creates a "chilling effect" on my right to meaningful access to the courts.** As an indigent *pro se* litigant, I lack the resources of a law firm. If I am forced to disclose—and thus potentially stigmatize—the digital assistance tools I use to level the playing field, I am being penalized for my poverty and discouraged from advocating for myself.

- **The Order adds a redundant and risky layer to my existing obligations.** Under Federal Rule of Civil Procedure 11, I already certify that my filings are accurate and legally grounded. Adding an undefined "AI disclosure" requirement does not improve the integrity of my filings; it only adds a significant risk of sanctions that "chills" my due process rights.

- The Court's sudden imposition of this extra-statutory 'AI disclosure' mandate nearly five months after the commencement of this action—without any mention of such a requirement in the initial Case Management Order—constitutes a clear abuse of discretion and a 'mid-stream' rule change that denies Plaintiff the fair notice required by Due Process. Such a delayed and targeted imposition of a new procedural hurdle is not an exercise of docket management, but a documented pattern of judicial error and administrative surprise designed to obstruct, rather than facilitate, the resolution of this

18

case on its merits. And confirms a pattern of abuse of discretion and legislating from the bench, that expands beyond this case.

- **XX. DISTINGUISHING THE PRESENT ACTION FROM PRIOR SANCTIONED MATTERS: A FAILURE OF REASONED ANALYSIS**

- The Court's reliance on its "Standing Order" appears to be motivated by high-profile instances of attorney misconduct in unrelated cases (e.g., the Florida attorney sanctions matter). However, to apply the same restrictive surveillance to this action is a manifest **Abuse of Discretion** and a failure of reasoned analysis, as the cases are factually and legally incomparable:

- **Legality and Service:** In the prior matter cited by the Court, the defendants were legitimate entities operating legally and served promptly. In the present action, Plaintiff is litigating against an objective multi-state fraud involving an illegal organization that has spent **1.5 years defying state court subpoenas**, hiding critical surveillance video, and intentionally evading service.

- **Disproportionate Burden:** Applying a "Generative AI" Standing Order to a *pro se* litigant who is uncovering a sophisticated fraud—without identifying a single inaccurate citation in his filings—is a procedural non-sequitur. The Court is improperly "grouping" cases together, using a blanket administrative tool to address a problem that does not exist in this record.

- **Improper Application:** A rule that might be correctly applied to a sanctioned attorney in a routine civil case is ill-applied and oppressive when used to obstruct an indigent Plaintiff who is battling documented spoliation of evidence and ongoing illegal operations by the Defendants. By failing to distinguish between bad-faith attorney misconduct and good-faith *pro se* advocacy, the Court has issued an order that lacks a rational basis in the current facts of this case.

## XXI **THE TARGETED CHILLING OF CIVIL RIGHTS ADVOCACY UNDER *DOMBROWSKI***

The cumulative effect of the Court's actions—withholding the audio record, threatening sanctions for naming defendants, and imposing an undefined technological "Standing Order"—leads to the inescapable conclusion that the Court is engaged in a targeted effort to chill the

19

advocacy of an indigent litigant.

- **The *Dombrowski* Violation:** Under ***Dombrowski v. Pfister***, 380 U.S. 479 (1965), the Supreme Court recognized that when the state (or a court) uses vague and overbroad regulations to intimidate or harass those seeking to exercise their constitutional rights, the "chilling effect" itself constitutes an immediate and irreparable injury. By forcing Plaintiff to litigate in a "minefield" of undefined AI disclosures while the Court maintains a "Closed Loop" on the hearing record, the Court has created exactly the type of procedural harassment *Dombrowski* forbids.

- **Irreparable Injury to the Right to Petition:** This is not merely an administrative disagreement; it is an abuse of discretion that strikes at the core of the First Amendment. When a court uses its "inherent authority" to monitor a litigant's research habits and threaten their financial survival with sanctions—without a single instance of bad-faith conduct in the record—it is no longer acting as a neutral arbiter. It is acting as an adversary to the Plaintiff's right of access to the courts.

- **Conclusion of Law:** Because this Order is unconstitutionally vague, serves no legitimate procedural purpose in this specific case, and was issued as a "mid-stream" surprise to obstruct a valid motion for injunctive relief, and in combination by the court hiding what occurred at a hearing, to limit the plaintiffs power to object and appeal, it must be vacated to prevent a manifest miscarriage of justice. It is clearly improper, and frankly un-American. The Standing Order exceeds the Court's authority under the Rules Enabling Act and is inconsistent with the Illinois Supreme Court's December 2024 guidance discouraging mandatory AI disclosures in favor of existing Rule 11 duties. The sanctions warning was issued sua sponte without a separate Rule 11 motion or the 21-day safe-harbor notice required by Fed. R. Civ. P. 11(c)(2). It is therefore premature and should be stricken from the record." (Cites Rule 11 directly.) Reconsideration of recusal is warranted under 28 U.S.C. § 455(a) because the cumulative appearance of partiality—repeated refusal to rule on the TRO, sua sponte cancellation of the February 27 hearing, denial of the verbatim record while enforcing an AI certification order against an IFP litigant with no inaccurate citations identified—would cause a reasonable observer to question the Court's impartiality. See Liteky v. United States, 510 U.S. 540, 548 (1994)

- Preservation of the Full Record for De Novo Review and to Prevent a "Closed Loop" of

Error. The Tenth Circuit has repeatedly held that a district judge cannot conduct meaningful de novo review of a magistrate judge's recommendation without access to the complete record of the proceedings below. See United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996) (district judge must review "the full record" to focus on the heart of the dispute); Hall v. City & County of Denver, No. 05-1419, 2006 WL 2620460, at *2 (10th Cir. Sept. 20, 2006) (indigent litigants are entitled to a free transcript under § 753(f) when the court certifies the appeal is not frivolous and the record is needed to decide the issues). Denial of the $34 audio recording —while simultaneously directing Plaintiff to comply with the Court's Standing Order on Generative AI (ECF No. 109)—would force Plaintiff to prepare Rule 72 objections in an informational vacuum, violating the very accuracy the Court seeks to protect and creating the precise "closed loop" of incomplete review forbidden by Griffin v. Illinois, 351 U.S. 12, 19 (1956) and Britt v. North Carolina, 404 U.S. 226, 227 (1971). The audio is the least burdensome functional equivalent of a transcript and should be produced at government expense forthwith.

## XXII. REQUESTED RELIEF

For the reasons set forth above and in all prior incorporated filings, Plaintiff respectfully requests that the Court:

1. Modify ECF No. 109 to order immediate preparation of the audio recording (MP4 digital file) of the March 30, 2026 status conference at government expense, waiving the $34.00 fee;

2. Certify under 28 U.S.C. § 753(f) that the action is not frivolous and the audio is necessary;

3. Toll the Rule 72 objection deadline until 14 days after the audio is docketed and available;

4. Strike the sanctions threat at ECF No. 104, p. 10, as unsupported by the hearing record;

5. Restore the full title of any truncated docket entry (e.g., ECF No. 110); and

6. Grant any further relief necessary to preserve the integrity of the record and Plaintiff's due-process rights.

Plaintiff continues to act in good faith and stands ready to proceed on the merits once the record

is available. The audio recording is the minimal, least-expensive means of ensuring that justice is not administered in an informational vacuum.

7. Reconsider recusal as outlined in ECF 98 and recuse and both judges, restrain from further contact with the plaintiff in any shape or form as outlined in Plaintiffs initial Magistrate Neutrier recusal motion.

8. Vacate the reference to the standing order on AI as its not applicable and unconstitutional. Or prepare for us to appeal that. On the grounds stated herein.

Respectfully submitted this 14th day of April, 2026.

**/s/ John T. Hessert**

John T. Hessert

Plaintiff, pro se

General Delivery

Bellingham, WA 98225

**CERTIFICATE OF SERVICE**

I certify that on April 14, 2026, a copy of the foregoing was filed with the Court **/s/ John T. Hessert**